499 P.2d 721

Melvin Eugene SAILES, Appellant,

v.

Ada Mae JONES, Appellee.

No. 1 CA–CIV 1691.

Court of Appeals of Arizona,
Division 1,
Department B.

Aug. 1, 1972.

Rehearing Denied Aug. 30, 1972.

Review Denied Oct. 10, 1972.

Minne & Sorenson by John W. Rood, Phoenix, for appellant.

Raineri, Raineri & Raineri by Joseph C. Raineri, Sr., Scottsdale, for appellee.

JACOBSON, Judge.

The sole question raised by this appeal is whether the plaintiff-mother is entitled to the entire proceeds of her deceased son's life insurance policy granted to her by the trial court on her motion for summary judgment.

This case arises out of a declaratory judgment action brought by the plaintiff seeking a judicial determination as to her rights in the proceeds of a Servicemen's Group Life Insurance Policy.

The factual background giving rise to the proceeding before the trial court is as follows. In 1946, plaintiff-appellee, Ada Mae Jones, gave birth to her second

child, Frederick Alan Jones. This child was born out of wedlock and the mother was never sure who fathered her son. Sometime in the mid-1960's Frederick joined the armed services and in April 1966, he was killed while serving on active duty.

At the time of his death, Frederick was the owner of a Servicemen's Group Life Insurance (SGLI) policy in the amount of $10,000. The deceased was not married, had no children, and he had failed to designate a beneficiary of the policy. The Servicemen's Group Life Insurance Act which created this type of insurance policy, 38 U.S.C. § 765 et seq. (1965), lists various ranked classes of beneficiaries who take under the act in the event the insured fails to designate a beneficiary. Section 770(a) Fourth of the Act provides in part that the proceeds of the policy shall be paid "to the parents of such member or former member or the survivor of them."

Mrs. Jones applied for the policy proceeds but only received $5,000 from the insurance company, she being advised that the remaining balance was being withheld pending a determination in state court as to who were the deceased's parents.

To resolve this question, Mrs. Jones instituted a probate proceeding where she filed a petition for determination of heirship claiming that she was the only surviving next of kin and therefore entitled to the entire proceeds of her son's life insurance policy. The trial court, sitting as a probate court, found that Melvin Eugene Sailes, the defendant-appellant, was the natural father of the deceased, and therefore Sailes was entitled to one-half of the insurance proceeds.

On appeal, this Court (In re Estate of Jones, 10 Ariz.App. 480, 460 P.2d 16 (1969)) held that the probate court was without "jurisdiction to entertain the petition for determination of heirship" because the estate of Frederick Alan Jones had no assets, and the existence or at least the possible existence of assets belonging to the deceased was a prerequisite to the in-vocation of probate jurisdiction. We dismissed the probate proceeding and advised that a declaratory judgment action was the proper procedure for making the required determination.

Pursuant to our decision and advice, Mrs. Jones instituted a declaratory judgment action in superior court asserting the same claim as set forth in the probate proceeding. Both Mrs. Jones and defendant Sailes made cross motions for summary judgment. The trial court denied defendant's motion, granted plaintiff's, and entered judgment for her holding that she was entitled to the entire proceeds of her son's life insurance policy. From this adverse judgment, Sailes has appealed.

The essence of Sailes's contention is that a genuine issue of material fact exists as to whether he was the natural father of the deceased, and consequently, it was error for the trial court to grant summary judgment. On the other hand, Mrs. Jones contends that this was not a true motion for summary judgment, but in any event, even if Sailes is the natural father of the deceased he is not entitled to any proceeds of the life insurance policy.

At the outset, this Court notes and emphasizes that the parties in the trial court proceedings submitted the case to the court on cross motions for summary judgment pursuant to Rule 56, Rules of Civil Procedure, 16 A.R.S. The parties stipulated that the transcript of the probate proceeding along with the exhibits be considered by the Court. In addition, the parties submitted Rule 56(c) opposing affidavits. Our reading of the record convinces us that in spite of the stipulation, the trial court handled this matter on cross-motions for summary judgment and ruled only on issues of law in connection therewith. We can therefore consider this appeal only in that posture.

A motion for summary judgment is only proper when there are no genuine issues as to any material facts and the moving party is entitled to judgment as a matter of law. Rule 56(c) Rules of Civil Proce-

dure, 16 A.R.S. Our examination of the record reveals the following factual dispute. The birth certificate of Frederick Alan Jones shows appellant Sailes as being the father. Mrs. Jones stated in the probate proceeding that she did not know who was the father since any one of three individuals could have been. She put Sailes's name on the birth certificate as the father because "the other guys were gone and he was here and had a good job."

When Mrs. Jones applied for public welfare assistance, she was told to file a complaint against the father at the county attorney's office. A letter from the welfare department, admitted into evidence, states that someone from the county attorney's office contacted Sailes and his responses were unsatisfactory for "at one time he admits that the child is probably his and in the next sentence denies it." Sailes made a court appearance but the case was evidently dismissed.

Although Mrs. Jones could not say that Sailes was not the father, Sailes, on the other hand, now positively asserts by affidavit that he is the deceased's father.

■ Based on the above evidence, it is clear that a factual dispute exists as to paternity. Having concluded that a factual dispute is present, is this factual dispute material so as to preclude the granting of a motion for summary judgment?

Appellant Sailes contends that it is, arguing that if he is a natural parent, he is a member of the class of statutorily designated beneficiaries who take in the event the insured fails to name a beneficiary. 38 U.S.C. § 770(a). For authority appellant relies on Nunn v. Nunn, 81 N.M. 746, 473 P.2d 360 (1970).

In Nunn the court was presented with the question of who is a "parent" within the meaning of the Servicemen's Group Life Insurance Act, though the issue arose in a different factual setting than the instant case—rights of a stepfather versus those of a natural father. In discussing this question, the court stated:

"The Servicemen's Group Life Insurance Act is one of a series of Veteran's Insurance Programs that have been enacted beginning with the War Risk Insurance Act in World War I. The program enacted precedent to the Servicemen's Group Act was the National Service Life Insurance Act, 38 U.S.C. §§ 701–724. That particular act specifically defined the term 'parent' to include stepparents and persons *in loco parentis*. Then why was the term specifically defined in the one act and not in the other? We are inclined to the view that Congress in framing the National Service Act concluded that the word 'parent' was a word that did not normally include within its meaning a person *in loco parentis* or a stepparent and, therefore, in order to broaden the meaning of the term Congress specifically defined the term in the Act. However, in the Servicemen's Group Act, the word 'parents' was not specifically defined because only the normally accepted limited meaning of the term was intended. It is well settled that unless the contrary appears, statutory words are presumed to be used in their ordinary and usual sense and with the meaning commonly attributable to them. (Citations omitted.) *The word 'parents' used in its ordinary and usual sense means one who begets or brings forth an offspring,* and usually denotes consanguinity rather than affinity. Also it commonly refers to the natural father and mother, to blood relation." 473 P.2d at 361, 362. (Emphasis added.)

The court concluded that the term "parents" as used in § 770(a) "is limited to only the natural parents of the insured."

In Prudential Insurance Co. of America v. Warner, 328 F.Supp. 1128, 1131 (W.D. Va.1971), the court in interpreting § 770(a) of this Act, defined the term "parent" as "one who begets an offspring", stating that Congress is "presumed to have used a word in its usual and well-settled sense." In Miller v. United States, 123 F. 2d 715, 718 (8th Cir.1942), the court stated

that "the term 'parent' primarily means one who begets a child. It usually denotes consanguinity rather than affinity." In Manning v. Prudential Insurance Co. of America, 330 F.Supp. 1198 (D.Md.1971), the court held that even if the natural mother abandoned the serviceman at infancy, she would not be precluded from receiving benefits under § 770(a) as a surviving parent. However, in this case the deceased serviceman's illegitimate daughter prevailed over the natural mother.

■ We are in agreement with the cases which have defined "parent" to mean "one who begets offspring." The fact that the offspring was begotten in or out of wedlock has no bearing on the definition of parent as used in § 770(a); nor does the fact that a parent abandoned the child during minority preclude him from qualifying as a surviving parent under the Act. Prudential Insurance Co. of America v. Warner, *supra*; Manning v. Prudential Insurance Co. of America, *supra*.

■ We therefore hold that both natural parents are entitled to share equally in the proceeds of a SGLI policy even though the insured serviceman was the product of a meretricious relationship or one of the parents abandoned him during minority.

However, Mrs. Jones contends that even if Sailes is a proper beneficiary under the Act, he is estopped from asserting his rights as a parent which would entitle him to share in the insurance proceeds because his past course of conduct—never admitting to the deceased that he was his father or ever contributing to his support—is inconsistent with his present position.

As authority for her position, Mrs. Jones relies on the doctrine of *quasi* estoppel as

set forth in Unruh v. Industrial Commission, 81 Ariz. 118, 301 P.2d 1029 (1956). In *Unruh* the court denied a woman benefits under the Workmen's Compensation Act for the death of her prior husband because she had obtained a "mail order" divorce and then remarried another in reliance on the void decree. The court explained its holding by stating:

"There are certain principles recognized which are somewhat analogous to estoppel and which are sometimes described as a *quasi* estoppel. There the conscience of the court is repelled by the assertion of rights inconsistent with a litigant's past conduct." 81 Ariz. at 120, 301 P.2d at 1031.

■■ The doctrine of *quasi* estoppel [1] is based on election, ratification, affirmance, acquiescence or acceptance of benefits. Godoy v. County of Hawaii, 44 Haw. 312, 354 P.2d 78 (1960). The doctrine precludes a party from asserting a claim inconsistent with a position previously taken by him, Unruh v. Industrial Commission, *supra*; KTVB, Inc. v. Boise City, 94 Idaho 279, 486 P.2d 992 (1971); Clontz v. Fortner, 88 Idaho 355, 399 P.2d 949 (1965), where it would be unconscionable to permit a person to maintain a position inconsistent with one in which he acquiesced or one in which he accepted a benefit. Albert v. Joralemon, 271 F.2d 236 (9th Cir.1959); Holmes v. Graves, 83 Ariz. 174, 318 P.2d 354 (1957).

■ In applying the above principles to the facts in the instant case, we fail to see the inconsistency in Sailes's course of conduct as advocated by the appellee. Nowhere in the record did Sailes ever deny paternity. Even the report from the wel-

---

1. Frequently, the distinction between *quasi* estoppel and equitable estoppel is blurred, yet the two doctrines which produce the same results, are based on different types of conduct. The essentials of equitable estoppel are a representation by one party either by word or conduct that certain facts exist inducing the other party to rely thereupon and who does so to his detriment. Trollope v. Koerner, 106 Ariz. 10, 470 P.2d 91 (1970); In re Estate of Trigg, 102 Ariz. 140, 426 P.2d 637 (1967); Tiffany, Inc. v. W. M. K. Transit Mix, Inc., 16 Ariz.App. 415, 493 P.2d 1220 (1972). In *quasi* estoppel reliance by the party invoking the principle is not required. In re Estate of Trigg, *supra*; Cook v. Ball, 144 F.2d 423 (7th Cir. 1944), cert. den. 323 U.S. 761, 65 S.Ct. 93, 89 L.Ed. 609 (1944).

598

fare department is not a conclusive statement that he denied paternity. The fact that he retained an attorney to take care of a warrant for his arrest is not in and of itself an implied denial of paternity. The surest way to maintain one's freedom is to engage an attorney to quash an arrest warrant. Nor is the failure of Sailes to contribute to the deceased's support during his minority, which may be reprehensible, an implied denial of paternity as, unfortunately, many admitted natural fathers fail to support their children. Nor can Sailes's negative action of failure to support be converted into an acquiescence of a non-parental relationship as was defined in Holmes v. Graves, *supra*.

Since we find no inconsistency in appellant's position, we hold that the doctrine of *quasi* estoppel is not applicable in the present case.

The appellee seems to suggest that the doctrine of judicial estoppel is applicable, which would preclude Sailes from now asserting paternity because of his participation in the paternity civil action involving that question.

■ Under the doctrine of judicial estoppel a party is bound by his judicial declarations and may not contradict them in a subsequent proceeding involving the same issues and parties. Martin v. Wood, 71 Ariz. 457, 229 P.2d 710 (1951); Adams v. Bear, 87 Ariz. 288, 350 P.2d 751 (1960); Graybar Electric Co. v. McClave, 91 Ariz. 223, 371 P.2d 350 (1962); Mecham v. City of Glendale, 15 Ariz.App. 402, 489 P.2d 65 (1971). Arizona requires that before the doctrine is applicable the first judicial proceeding must have terminated in a final judgment. In re Estate of Cohen, 105 Ariz. 337, 464 P.2d 620 (1970); Rossi v. Hammons, 34 Ariz. 95, 268 P. 181 (1928).

■ The doctrine of judicial estoppel is not applicable in the present case because the prior civil action in which Sailes was a defendant did not culminate in a final judgment. The record before us does not contain a transcript of the prior civil action instituted against the appellant. In the transcript taken at the probate proceeding, which is before us, Sailes stated that Mrs. Jones had the complaint dismissed because "we agreed on the child support." This statement is inconsistent with the report from the welfare department which states that no complaint was ever filed against Sailes. Although there is some confusion as to exactly what action was taken against Sailes, one thing is clear: No judgment was entered.

■ For the foregoing reasons, we hold that the trial court incorrectly determined this matter on a motion for summary judgment. Therefore, the judgment of the trial court is reversed and the matter remanded to the trial court for further proceedings not inconsistent with this opinion.

HAIRE, C. J., and EUBANK, J., concur.