514 P.2d 1003

**DEL RIO LAND, INC., Appellant,**

v.

**Pierre H. HAUMONT, Jr. and Vernece Haumont, his wife, Appellees.**

**No. 11078–PR.**

Supreme Court of Arizona, In Banc.

Oct. 11. 1973.

Rehearing Denied Nov. 13, 1973.

**8**

Moeller, Jensen & Henry, by James Moeller and Michael J. LaVelle, Robbins & Francone, by Merrill W. Robbins, Phoenix, for appellant.

Cox & Cox, by L. J. Cox, Jr., Phoenix, for appellees.

HOLOHAN, Justice.

By this appeal appellant seeks to set aside the judgment of the superior court ordering specific performance. The Court of Appeals granted the motion of appellees to dismiss the appeal as moot. 18 Ariz. App. 348, 501 P.2d 1189 (1972). We granted review. The decision of the Court of Appeals is vacated, and the judgment of the superior court is reversed.

The appellant corporation is a family corporation owned by the Carr family. The corporation ceased its business activity in 1968, and two years later the decision was made to sell the real property and equipment of the corporation. It was decided that the sale should be by auction. The auction was arranged and an agreement between appellant and the auctioneer provided that the land would be sold "subject only to the existing mortgage." A similar provision was contained in the advertising brochure sent out to interested persons including appellee Pierre Haumont.

It was the contention of the officers of appellant that the original listing with the auctioneer was for not less than $4,500 per acre "at the discretion of the owners," but the auctioneer secured a second listing, claiming to have lost the first, and he had the listing signed in blank promising to fill it out in the same terms as the original. The listing was filled out to read that the sale was "subject to the approval of the auctioneers."

There is a dispute in the facts as to whether the auctioneer announced the sale as subject to a mortgage of some $55,000 on the land or whether he announced the sale for a bid price as the full purchase price of the property with the mortgage to be paid from the proceeds of the sale. Appellee Pierre Haumont took the position in his deposition that the sale was under the latter conditions, which would have required the appellant to pay off the mortgage from the proceeds of the sale.

Appellant refused to accept the appellees' bid of $2,600 per acre. Haumont brought action for specific performance, and, after discovery by both parties had been completed, Haumont moved for, and was

granted, summary judgment for specific performance.

■■ It is axiomatic that a motion for summary judgment may not be granted if there is a material dispute in the facts. Viewing the facts in the light most favorable to the party opposing the motion for summary judgment [Hall v. Motorists Insurance Corporation, 109 Ariz. 334, 509 P. 2d 604 (1973)] it appears that there are disputed fact issues which must be tried.

The trial court may have taken the position that there was not a material dispute in the facts, at least insofar as a resolution of the dispute between the corporation and Haumont. Apparently the trial court concluded that the term "subject to the mortgage" meant that the seller would be required to use the proceeds of the sale to pay off the mortgage. This was the position advocated by the auctioneer and Haumont. We cannot agree with this interpretation of the words used.

■ The term "subject to" has a variety of definitions depending upon the subject matter in which it is used. 83 C.J.S. p. 555. When the subject matter is real property and mortgages, the term "subject to" has generally meant "burdened with." Thus, a sale of real property subject to a mortgage means that the buyer acquires the property subject to the burden of the mortgage. The buyer, by taking subject to the mortgage, does not necessarily assume a personal obligation to pay it. Seale v. Berryman, 46 Ariz. 233, 49 P.2d 997 (1935); S. L. Nusbaum & Co. v. Atlantic Virginia Realty Corp., 206 Va. 673, 146 S. E.2d 205 (1966). A purchaser who buys real property subject to a mortgage pays the consideration required by the seller and takes the land subject to the encumbrances without a personal obligation to pay the mortgage, but subjects himself to loss of the property if the mortgage debt is not paid. Shepherd v. May, 115 U.S. 505, 6 S.Ct. 119, 29 L.Ed. 456 (1885).

A sale or auction subject to a mortgage means that the seller receives the purchase price and the buyer takes the property subject to the unpaid mortgage; while the buyer is not under a personal obligation to pay the mortgage, he must do so if he desires to retain the ownership of the property, for the seller is not required to use the funds paid him to pay off the mortgage. The terms of a sale which include a provision, "subject to the mortgage" indicates that the actual or true purchase price of the property is in actuality the amount paid to the seller plus the amount of the mortgage.

After the trial court granted the motion for Haumont for summary judgment, a formal written judgment was prepared by the successful party, objections were filed by appellant, overruled by the trial court, and a formal written judgment requiring specific performance was signed and filed. Shortly thereafter the appellant corporation through its officers executed a written agreement of sale with Haumont, and the executed agreement was presented to the title company for processing the sale. The following month a notice of appeal was filed on behalf of the corporation.

The appellees moved to dismiss the appeal as moot, and, after hearing argument and considering the matters submitted with the motion, the Court of Appeals granted appellees' motion and dismissed the appeal.

■ It is well settled that an appellate court will not consider a case' which is moot. Mesa Mail Publishing Co. v. Board of Supervisors, 26 Ariz. 521, 227 P. 572 (1924). In the past we have held that the payment of a money judgment made a case moot. In re Brown, 39 Ariz. 545, 8 P.2d 453 (1932). In the cited case the Court stated:

"He has made nine assignments of error, but, he having satisfied the judgment of the court by paying it all, his assignments are moot. After an appeal, if the judgment or decree is *voluntarily*

paid or satisfied, it deprives the appellate court of any possible power to grant relief. 3 C.J. 361, § 116. But here appellant paid the judgment before the appeal. He therefore had nothing to appeal from. It might be gratifying to him if the court would take the time and trouble to pass upon the numerous questions he has raised, but he could thereby get no relief." (Emphasis supplied.) 39 Ariz. at 547, 8 P.2d at 454.

The exception implicit in the *Brown* case was that involuntary payment would not moot the case. In Webb v. Crane Co., 52 Ariz. 299, 80 P.2d 698 (1938) this Court had occasion to examine the question of what constituted involuntary payment of a judgment. This Court stated with approval the rule set forth in Freeman on Judgments, Volume 2, Fifth Edition, page 2410, § 1165:

"One against whom a judgment is entered, if he fails to satisfy it, must expect to see his property seized and sold at a sacrifice, and it is difficult to conceive how his payment of the judgment can give rise to any estoppel against his seeking to avoid it for error. Nevertheless there are cases deciding that one paying a judgment against him precludes all appeal therefrom. The better view, we think, is, that though execution has not issued, the payment of a judgment must be regarded as compulsory, and therefore as not releasing errors, nor depriving the payor of his right to appeal, unless payment be by way of compromise and settlement or under an agreement not to appeal or under circumstances leaving only a moot question for determination."

This Court held:

"Had appellant not given a *supersedeas* bond or in lieu thereof paid the judgment, his property, including equipment, could have been seized and sold. Hence, it cannot be said that in satisfying the judgment to protect himself from such a contingency he acted voluntarily or accepted benefits under the judgment. It follows, therefore, that his action did not constitute either a waiver or an estoppel." 52 Ariz. at 320, 80 P.2d at 708.

In addition to having a judgment for specific performance hanging over it, the appellant corporation was in financial difficulty, and the mortgage on the property in controversy had been foreclosed by the mortgagee, and an actual judgment of foreclosure had been entered. There is no actual dispute that the corporation would not have been able to file a supersedeas bond in this case. The actions taken by the officers of the corporation were compelled by the necessities of the situation and must be regarded as compulsory rather than voluntary.

It is true that the trial court had not been asked to impose the sanctions of contempt upon the appellant or its officers, but we do not believe that it is necessary to show the issuance of a contempt citation before compliance with a judgment can be termed involuntary. It is not necessary that a party risk a contempt citation before his compliance may be termed involuntary; on the contrary, the existence of the judgment is a sufficient condition and threat which, together with other factors, may be sufficient to show that the compliance was involuntary.

It is argued that the actual agreement of sale contains terms which were not specifically required in the judgment for specific performance. A comparison with the provisions of the judgment and the terms of the agreement support this position. The differences, however, are not sufficient to cause us to conclude that there had actually been a compromise and settlement or an accord and satisfaction. The judgment of the trial court required the officers of the appellant corporation to "execute, acknowledge and deliver all deeds, documents, and other instruments required to complete the sale of the above described

land in order to convey good and sufficient title of said land free from all encumbrances to plaintiff, . . . . " The judgment further designated that the matters were to be handled through a specified title company which would handle the escrow and collection of funds for the transaction. The terms of the written agreement and escrow instructions viewed in the light of the court's order do not appear to be in fact different from the specific provisions, but in addition to, and in such a sense supplemental and necessary to carry out the conveyance of the property free and clear of encumbrances.

▮ Our attention has been called to the fact that the written agreement establishes an overall price of $200,959.20 whereas the bid price was computed at some $188,006. The difficulty with resolving the figures is that the amount of acreage actually sold was at first thought to be approximately 72 acres, but by the time of the actual execution of the sale the size of the parcel was found to be approximately 77 acres. The bid price was $2,600 per acre, and the judgment of the trial court decreed that the sale be at $2,600 per acre. The judgment did not specify the gross price, but referred only to the unit price of $2,600 per acre. Under the circumstances it appears that the larger total figure is in compliance with the court order that the corporation convey the land at the stated rate per acre. The additional six acres discovered in what was actually conveyed over the supposed size of the parcel accounts for the addition of some $12,000 being added to the total price. This in no way can be construed to be a compromise or settlement of the dispute. The appeal should not have been dismissed.

Judgment reversed.

HAYS, C. J., CAMERON, V. C. J. and STRUCKMEYER, J., concur.

Note: Justice LORNA E. LOCKWOOD did not participate in the determination of this matter.