[Civil No. 2234. Filed July 7, 1925.]

[238 Pac. 327.]

# THE BARTLETT–HEARD LAND AND CATTLE COMPANY, a Corporation, and DWIGHT B. HEARD, Appellants, v. CLIFFORD B. HARRIS, Appellee.

1. APPEAL AND ERROR—FINDING ON CONFLICTING EVIDENCE NOT DISTURBED.—Jury's finding on conflicting evidence will not be disturbed on appeal.

2. FRAUDS, STATUTE OF—WRITTEN DOCUMENT, STATING ESSENTIAL ELEMENTS OF CONTRACT, AND SIGNED BY PARTY TO BE CHARGED OR HIS AGENT, SUFFICIENT "MEMORANDUM OF WRITING."—Any document, written either to evidence contract or for any other purpose, is a sufficient "memorandum of writing" within Civil Code of 1913, paragraph 5152, if it states all essential elements of contract with reasonable certainty and is signed by party to be charged or his agent.

---

1. What constitutes sufficient memorandum to satisfy statute of frauds, see notes in 2 L. R. A. 212; 6 Eng. Rul. Cas. 251. See, also, 25 R. C. L. 643.

2. Sufficiency of telegrams as memorandum, see notes in 93 Am. Dec. 516; 110 Am. St. Rep. 760; 50 L. R. A. 240. See, also, 25 R. C. L. 644.

3. FRAUDS, STATUTE OF—TELEGRAMS AND LETTERS MAY BE CONSIDERED TOGETHER IN MAKING UP MEMORANDUM OF WRITING REQUIRED BY STATUTE.—Several letters and telegrams may be considered together in order to make up memorandum of writing required by Civil Code of 1913, paragraph 5152.

4. FRAUDS, STATUTE OF—WRITTEN OFFER SIGNED BY PARTY TO BE CHARGED AND UNCONDITIONAL ORAL ACCEPTANCE THEREOF SATISFIES STATUTE; "MEMORANDUM OF WRITING."—A written offer of sale, if signed by party to be charged, and unconditional oral acceptance thereof, satisfies Civil Code of 1913, paragraph 5152, requiring "memorandum of writing."

5. FRAUDS, STATUTE OF — TELEGRAMS HELD TO CONSTITUTE WRITTEN OFFER OF SALE BY PARTY TO BE CHARGED, UNCONDITIONAL ORAL ACCEPTANCE OF WHICH WOULD SATISFY STATUTE.—Telegram from defendant, party sought to be charged, to plaintiff, incorporating by reference telegram received by defendant from plaintiff's employee, *held* a complete offer to sell certain heifers to plaintiff, and unconditional oral acceptance by plaintiff may be proved, and, if proved, offer and acceptance satisfy Civil Code of 1913, paragraph 5152, requiring memorandum of writing.

6. FRAUDS, STATUTE OF — DESCRIPTION IN MEMORANDUM IN SALE OF PERSONALTY SUFFICIENT, IF PROPERTY MAY BE IDENTIFIED THEREFROM WITHOUT PAROL EVIDENCE OF INTENTION.—In a sale of personal property, the description in memorandum required by Civil Code of 1913, paragraph 5152, is sufficient, if it supplies sufficient facts from which property may be identified without necessity of parol evidence of intention of parties.

7. FRAUDS, STATUTE OF—MEMORANDUM OF SALE OF HEIFERS HELD TO SUFFICIENTLY DESCRIBE THEM.—Written offer of sale of heifers "priced by Lassen at $80 f. o. b.," and "cattle you inspected," *held* to sufficiently describe heifers, and necessity of parol evidence of what cattle were priced and what ones were inspected does not make memorandum insufficient to comply with Civil Code of 1913, paragraph 5152.

8. TRIAL—ERROR CANNOT BE PREDICATED ON ISOLATED PHRASES OF INSTRUCTION.—It is not permissible to take isolated phrases from an instruction and predicate error on them.

---

See (1) 4 **C. J.**, p. 858.    (2) 27 **C. J.**, p. 256.    (3) 27 **C. J.**, p. 260. (4) 27 **C. J.**, pp. 266, 289, 292.    (5) 27 **C. J.**, p. 266.    (6) 27 **C. J.**, p. 274.    (7) 27 **C. J.**, p. 274.    (8) 38 **Cyc.**, pp. 1778, 1779.

3.  See 25 **R. C. L.** 648.

4.  As to who must sign memorandum of executory contract for sale of goods, see note in 28 **L. R. A.** (**N. S.**) 998; 43 **L. R. A.** (**N. S.**) 412.

APPEAL from a judgment of the Superior Court of the County of Maricopa. M. T. Phelps, Judge. Affirmed.

Messrs. Armstrong, Lewis & Kramer and Messrs. Kingan, Campbell & Conner, for Appellant.

Messrs. Baker & Whitney, for Appellee.

LOCKWOOD, J.—The Bartlett-Heard Land and Cattle Company, a corporation, hereinafter called defendant, had for many years among other things been engaged in the raising of pure-bred Hereford and Durham cattle. Dwight B. Heard was, during the period involved in this case, its vice-president and general manager. Clifford B. Harris, hereinafter called plaintiff, was during the same period a cattle broker with his office in Los Angeles, California.

Some time before May 23, 1919, plaintiff and defendant had been negotiating for the purchase by the former from the latter of certain Durham cattle. In the early part of May one F. F. Stonerod, who was in the employ of the plaintiff, visited defendant's ranch and purchased certain bulls, and also was shown a number of other cattle on the ranch by Lars Lassen, its superintendent. Stonerod asked Heard for permission to take some photos of the cattle, which was granted, and a number of these were taken by the former, with the aid of a photographer from Phoenix. After they were made, they were exhibited to Heard, and among them one of some white-faced Hereford heifers, which Stonerod told Heard was "your prize bunch of cattle." The bulls purchased were shipped, and Stonerod returned to Los Angeles. Shortly after Heard wired plaintiff, asking if he wished to buy the herd of shorthorns concerning which they had been negotiating. Harris was out of

the city, and Stonerod sent the following telegram to Heard:

"May 23, 1919.

"Dwight B. Heard, Phoenix, Arizona. Mr. Harris in San Diego today will answer your wire tomorrow upon his return. If carload Hereford heifers have not been sold please advise by wire promptly. Lassen priced them to us at eighty dollars f. o. b. Phoenix. Please verify this.

"F. F. STONEROD."

Heard answered as follows:

"Phoenix, Ariz. May. 24, 1919.

"F. F. Stonerod care C. B. Harris Co., Haas Bldg. Los Angeles, Calif. Yours received hope hear from Harris today are prepared deliver twenty heifers eighty dollars f. o. b. Phoenix these are all the heifers you inspected await reply may be Los Angeles if so can confer with Harris.

"DWIGHT B. HEARD."

Pursuant to the last sentence therein Heard went to Los Angeles, and there was an interview between him and Harris on May 26th, at the office of the latter. After this interview Heard sent the following telegram:

"May 26, 1919.

"Lars Lassen Superintendent Bartlett-Heard Ranch, Phoenix, Arizona. Have advised Harris that if it is absolutely necessary will hold white face heifers sold to him until June fifth. He will try however to ship by June first.

"DWIGHT B. HEARD."

Stonerod went to defendant's ranch to get the heifers, and when he arrived found twenty ready for delivery, which he claimed were not the ones purchased, but an inferior lot, and refused to accept them. He wired for Harris, who came over and conferred with Heard, but no agreement could be reached; Harris claiming he had purchased one lot, and Heard insisting it was an absolutely different one, admittedly of

a much lower grade. It had appeared in the meantime that one of the bulls purchased by Harris had turned out to be a nonbreeder, and Harris testified that when Heard was in his office May 26th he told him of that fact, and that he, Harris, had sold the bull to one Crowley for $300, and would have to make it good to him, and that Heard replied, "I will make it good with you. Everything that is sold from the Bartlett-Heard ranch has to be absolutely right in every respect," and that the bull was finally sold for beef for $51.50. Plaintiff and defendant could not reach an amicable settlement of their difficulties, and finally plaintiff brought this action against the Bartlett-Heard Land & Cattle Company and Dwight B. Heard individually, for damages on two counts: First, for failure to deliver the heifers he claimed he had purchased; and, second, for the failure to keep the alleged promise to make good on the defective bull.

The case was tried to a jury which returned a verdict in favor of plaintiff in the sum of $1,007 against the corporation; an instructed verdict being returned for Heard individually. Judgment was duly rendered thereon, and, after the usual motion for new trial was made and denied, defendant appealed.

We will discuss the assignments of error from the standpoint of the legal questions raised. The first is that there never was a valid contract of sale existing between the parties as regards the Hereford heifers. It is not disputed, nay, it is insisted by both parties, that defendant offered to sell some heifers to plaintiff, and plaintiff agreed to purchase some from defendant, the disagreement being, however, absolute as to whether or not they agreed in the office of plaintiff on May 26th upon which heifers were bought and sold. We need not review the evidence on this point, but merely say there is ample testimony in the record to sustain either a finding

that the minds of the parties did not meet, or else that they did, according to the view that the jury took of the veracity of the witnesses. The situation is the very common one of two sharply conflicting lines of testimony, one of which has been rejected and the other accepted by the jury, and an appeal to us to substitute our opinion thereon for the conclusion reached by the jury. We have repeatedly and consistently held we would not do so, and we see no reason to disturb our long-established rule at this time. *McCord* v. *McCord,* 13 Ariz. 377, 114 Pac. 968.

The second point is that, admitting the contract was made, it is within the statute of frauds, and there is no sufficient ''memorandum of writing'' within the meaning of paragraph 5152, R. S. A. 1913 (Civ. Code), to charge the defendant. That the contract is within the statute is not disputed, but plaintiff contends there is sufficient writing to satisfy the statute. The writings upon which he bases this claim are the telegrams quoted above. Are they sufficient under the law? Now no particular form of language or instrument is required. Any document, written either to evidence a contract or for any other purpose, is enough, if it states all the essential elements of the contract with reasonable certainty and is signed by the party to be charged or his agent. 27 C. J. 256. And, of course, several letters and telegrams may be taken together and considered with reference to each other, in order to make up the required memorandum. *Bibb* v. *Allen,* 149 U. S. 481, 37 L. Ed. 819, 13 Sup. Ct. Rep. 950 (see, also, Rose's U. S. Notes). So, a written offer of sale and the oral acceptance thereof, if such acceptance be unconditional, will by the great weight of authority satisfy the statute, if the offer is signed by the party to be charged. *Reynolds & Maginn* v. *Omaha, etc.,* 105 Neb. 361, 180 N. W. 584; *Willey* v. *Goulding,* 99 Kan. 323, 161 Pac. 611; 27 C. J. 266, and note.

The logic of this view is obvious. The statute of frauds is merely a rule of evidence, and not one governing the making of the contract, and its purpose is to prevent a party from being compelled, by oral and perhaps false testimony, to be held responsible for the conditions of a contract he claims he never agreed to. But, if that party has offered in writing to make the very contract with which it is sought to charge him, he has over his own signature admitted his willingness to be held thereby, and cannot justly complain because the acceptance of the other party who seeks to hold him is oral. While there is authority to the contrary, we think this is the better rule.

We think, then, the telegram from Stonerod to Heard in which the former says, "If carload Hereford heifers have not been sold, please advise by wire promptly, Lassen priced them to us at eighty dollars, f. o. b. Phoenix," and the one from Heard to Stonerod which by its reference to the telegram just quoted incorporates the latter as part of the offer, "Yours received. Hope hear from Harris today. Are prepared deliver twenty heifers eighty dollars f. o. b. Phoenix, these are all the heifers you inspected," is certainly an offer to sell the twenty Hereford heifers which were inspected by Stonerod and priced by Lassen for $80 f. o. b. Phoenix. The offer and terms are complete and unconditional. Had Harris wired back, "Offer accepted," there could have been no dispute as to the memorandum being within the statute. As we have seen, an oral acceptance by plaintiff, if unconditional, may be proved, and, if proved, the offer and acceptance complete the contract.

But, it will be said, the memorandum does not identify the heifers sufficiently. In a sale of personal property the description in the memorandum is suffi-

cient, if it supplies sufficient facts from which the property may be identified without the necessity of parol evidence of the intention of the parties. In this case two identifying marks are supplied, which, although they must be attached to the proper cattle by parol evidence, require only evidence of fact and not of intention. They are: The heifers "priced by Lassen at eighty dollars f. o. b. Phoenix," and "the cattle you inspected." The necessity of parol evidence of what cattle Lassen priced and what ones Stonerod inspected does not make the memorandum insufficient. *Adams* v. *Guiraud,* 69 Colo. 112, 169 Pac. 580; *Darnell* v. *Lafferty,* 113 Mo. App. 282, 88 S. W. 784.

We have carefully considered the cases cited by defendant on this point, and do not think them applicable to the particular facts in the case at bar.

The third point raised is alleged error in certain instructions of the court on the second cause of action. The complaint sets up the purchase of ten bulls for breeding purposes; that one of them was unfit therefor; that defendant wrongfully concealed such defect from plaintiff, and, when notified thereof, promised to recompense plaintiff for any damages he suffered by reason of such defect, and that the damages amounted to $350. It will be seen that a specific promise to recompense after the sale and discovery of the defect is set up in the complaint. It may be possible that it also states an implied warranty of fitness, but, on examining the instructions of the court, it is plain the latter theory was not submitted to the jury. We cannot agree with counsel for defendant that the instructions complained of are ambiguous as to the theory on which this cause of action was tried. On the contrary, they state very clearly that plaintiff sought recovery on an expressed promise to recompense, made after it was informed of the defect and of the amount of the damages. The complaint as to

the instructions on the measure of damages is not well taken. It is not permissible to take isolated phrases therefrom and predicate error as we have frequently held. When taken as a whole this instruction states the law under the undisputed evidence in this particular case. The difference between the refund and the actual value of the bull was the proper test, if defendant was · liable at all, and, if under the circumstances testified to by plaintiff defendant promised to make the damages good, there was a sufficient consideration for his promise, and the case was properly submitted to the jury. *Heath* v. *Potlatch Lbr. Co.,* 18 Idaho, 42, 27 L. R. A. (N. S.) 707, 108 Pac. 343; 13 C. J. 349.

There being no reversible error in the record, the judgment is affirmed.

McALISTER, C. J., and ROSS, J., concur.