**HEBETS v. SCOTT.**

**No. 10974.**

Circuit Court of Appeals, Ninth Circuit.

Dec. 28, 1945.

Hill, Robert & Hill, of Phoenix, Ariz., for appellant.

Blaine B. Shimmel, of Phoenix, Ariz., for appellee.

Before DENMAN, STEPHENS, and ORR, Circuit Judges.

ORR, Circuit Judge.

Appellant, a resident of Arizona, brought suit in the Superior Court in and for Maricopa County, of that state, against appellee, a resident of California, alleging two causes of action:

First, that appellee employed appellant to obtain a purchaser for real estate that appellee owned in Maricopa County; that appellee agreed to pay appellant five per cent commission on the sale price; that a memorandum of such promise and agreement was in writing; that appellant negotiated a sale of appellee's land under the terms of the agreement; that appellant performed all the conditions of the contract, and prayed for judgment in the sum of $5,400.

Second, that appellant had performed services for appellee at his request in the selling of said real estate for the sum of $108,000; that such services were reasonably worth $5,400.

The cause was removed to the District Court of the United States for the District of Arizona on the ground of diversity of citizenship of the parties; thereafter, appellee answered denying the material allegations of the complaint.

Appellant relies on some forty-three letters, telegrams and other documents as evidencing the contract sued on. These letters, telegrams and documents were stipulated to contain all the writings by the parties relating to the transaction in question.

Appellee moved for summary judgment. The District Court entered judgment dismissing the action; hence, this appeal.

Counsel for appellee, taking his cue from the case of Henry v. Harker, 61 Or. 276, 118 P. 205, 122 P. 298, has paraphrased

the extensive correspendence as a written conversation between the parties.

We think the so-called "written conversation of the parties" is a fair presentation of the effect of the correspondence.

Appellant has not challenged its correctness. We therefore adopt it.[1]

■■■ A contract binding under the statute of frauds may be gathered from the letters, writings and telegrams of the

---

[1] "Document No.

1. Realtor: If your land is for sale we would like a listing of it.

2. Realtor: I have a party interested in your place. Will you consider a trade?

3. Owner: Perhaps you have the wrong impression of this property. I am not trying to sell it. If you have a buyer definitely interested and willing to pay the market price, let me have an offer that is a business one.

4. Realtor: I think I understand your position, but nevertheless urge a deal.

5. Owner: I will see you when I come to Phoenix; in the meantime, if you have a deal you think would interest me, let me know.

6. Realtor: We have an eastern buyer here. Talked with your tenant, Leo Smith, and told him you weren't much interested in selling; he says he has an option on the place. We might get you $225.00 per acre, but would have to be assured we would get 5% commission if we forced a sale to Smith.

(With this, the 1942 correspondence, January 8th to March 26th, concluded. It was not resumed until March, 1943.)

9. 10. Realtor: Have offer $90,000.-00 cash for your 360 acres. Wire or phone collect.

11. Owner: Thanks for offer. Not enough now. See you in April.

12. Realtor: I appreciate you are not offering your property for sale. Have a buyer who wants to offer $235.00 per acre, and would like you to reconsider and give me a definite expression.

13. Realtor: Would like definite price for at least ten days.

17. Realtor: Your tenant says he will bid against anyone making an offer for your place, I was afraid of this.

18. Realtor: Have two prospects. Awaiting letter.

19. Owner: I have a moral obligation to Smith, and will write him. In the meantime, just let the deal simmer. I repeat, what I told you in Phoenix, that you are the only broker who will be allowed to do anything on it. If I decide to put it in anyone else's hands, I shall give you ample time to work out anything you have in mind. At this time you are the only firm who knows I would consider selling at all. If you should develop something that is a deal, shoot me a letter on it. I will do my best to work it out for you. I will give you a letter as soon as I have an answer from Leo Smith.

20. Realtor: I appreciate your position with Smith. Also appreciate your kindness in not putting the place in other brokers' hands. But if the place is sold for $300.00 per acre, we will have come nearer earning the commission than Smith. I will put up $100.00 I can sell your place within thirty days from the time you give us a definite commitment.

21. Realtor: Have one Kendall interested in your place. Let me hear from you.

24. Realtor: Kendall has offered a trade for your place. Think he may pay cash. Let me hear which deal you prefer.

25. Realtor: Let me hear from you as to offer.

27. Realtor: No word from you. Please give us something definite.

28, 29. Realtor: Kendall has signed trade agreement. Will even be interested in buying. Come over at once.

31. Realtor: Wired you offer. When may we expect you over?

32. Realtor: Please answer wire. We need you here.

33. Owner: Can't come now, and shall not attempt to do anything until I am in Phoenix. The trade your party has sounds as if I might want it, but again, I can make no decision until I see it. Is this a deal or is it a prospect? If a deal ready to close, I will come over as soon as possible. And Morse, get this straight, no one ever worked on my affairs, or did me a favor, that didn't get just compensation for it; so take it easy, and keep your eyes and ears open for a proposition that will bring us both in an honest dollar or two.

34. Realtor: Purchase contract and deposit receipt signed by Kendall; to be binding only when signed by purchaser and seller.

35. Realtor: Please do not delay longer than necessary. Nervous strain has put Morse in the hospital.

36. Owner: Can't get report until next week. Will wire then.

37. Realtor: Have had Kendall's $10,000 deposit for twenty days. Still nothing definite from you. We thought we had a 'gentlemen's agreement' with you. You are not treating us right to ignore our telegrams and this offer.

38. Realtor: Kendall wants acknowl-

parties, in the event they express the essential elements of a contract.[2] However, our consideration of the correspondence relied on in this case leads to the conclusion that the essential elements necessary to create the contract alleged are lacking. No valid reason appears therefrom which would justify appellant in concluding he had a definite authorization to sell. This is evidenced by the fact that at the time appellant had a deposit from and the signature of a prospective purchaser he submitted the contemplated purchase to the appellee merely in the form of an offer. It will be noted that appellee at no time made a definite commitment to sell for a given price. He left many of appellant's urgent, persistent and oft repeated inquiries unanswered. Many of the answers made by appellee and relied upon by appellant as showing authorization to sell, such as, "You are the only broker who will be allowed to do anything on it," and "You are the only firm who knows I would consider selling at all," are merely statements of possible future intent. Such statements negative, rather than sustain, appellant's contention that he was employed to secure a buyer. In the first reply appellee made to appellant he informs him as follows: "I am not trying to sell it," and appellant answered that he fully appreciated appellee's position. We are impressed with the fact that the relations of the parties amounted to no more than persistent urging on the one hand and indifference on the other.

Appellant cites the case of Curran v. Hubbard, 14 Cal.App. 733, 114 P. 81, as supporting his position. It fails to do so. In the Hubbard case, supra, the owner requested the broker to get him an offer and the owner set a definite price. The action of appellee in this case is quite different in that he set no price. Appellant made the overtures; the appellee continued to reject, assuming a noncommittal attitude, leaving the door open, however, to the extent that if and when appellant should submit a proposition that was satisfactory he might then consider selling.

 Appellant urges for the first time in this court the contention that the agreement between the parties was for appellant to obtain an offer for the property that would be acceptable to appellee and that he (appellant) performed such conditional agreement. Having first urged the matter here we decline to consider it.

Judgment affirmed.

edgment of his acceptance your proposition on ranch.

39. Realtor: Advise coming over immediately to close deal.

40. Owner: Your letters and wires received. I cannot accept your proposition, but have delayed answer, hoping the picture would change. It hasn't at this writing. Can't get to Phoenix before next month. I am not trying to sell this place through or to anyone. My inability to close a deal hasn't the remotest connection with anything in Arizona, the price of land, or World War

II. When I can give you any other news I will write you.

41. Realtor: Advise by wire when you can deliver.

42. Realtor: If price a factor, believe Kendall would pay $325.00 per acre, if we could have definite assurance you would close deal. Advise what can be done.

43. Owner: Thanks for offer. Price no deciding factor. Impossible to make deal. See you when I come over."

[2] Bartlett-Heard Land & Cattle Co. v. Harris, 28 Ariz. 497, 238 P. 327.