442 P.2d 831

**ARIZONA TITLE INSURANCE & TRUST COMPANY, Appellant,**

v.

**J. Maurice HUNTER and Edna V. Hunter, Appellees.**

**No. 9230–PR.**

Supreme Court of Arizona.

In Banc.

July 3, 1968.

Stuart Herzog, Tucson, for appellant.

Dowdall, Harris, Hull & Terry, by Richard J. Dowdall, Tucson, for appellees.

McFARLAND, Chief Justice:

This case is before us on a petition for review of a decision of the Court of Appeals, 6 Ariz.App. 604, 435 P.2d 47, reversing a judgment of the Superior Court of Pima County. Decision of the Court of Appeals vacated, and judgment of Superior Court affirmed.

Plaintiffs-appellees, J. Maurice Hunter, and his wife, hereinafter referred to as plaintiffs, sold to defendant, Royal Properties, Inc., hereinafter referred to as Royal,

some real property upon which their home was located. The selling price was $30,000, to be paid by $6,000 down; the assumption of an existing first contract of approximately $4,900; the balance of approximately $19,100 to be paid to plaintiffs through Arizona Title at the rate of $300 per month. In order to expedite the financing and development of the property, it was agreed that the property would be conveyed in trust to defendant Arizona Title Insurance and Trust Company, a corporation, hereinafter referred to as Arizona Title, with the trust instrument naming plaintiffs as first beneficiary and Royal as second beneficiary. Since Royal said that it intended to develop the property, it requested a provision in the trust agreement to the effect that under certain conditions plaintiffs would permit Royal to mortgage the property, in which case plaintiffs would subordinate their lien to the lien of such mortgage.

The details were not clearly spelled out in the preliminary sales contract which plaintiffs and Royal signed, and which was probably drawn up by the realtor who made the sale. The contract was turned over to Arizona Title to draw up a trust agreement expressing the agreement of both parties. When the trust agreement thus prepared was presented to plaintiffs for signature, they took it to their lawyer for examination. He told them that the agreement did not protect them against the possibility that Royal might mortgage the property for a substantial amount and divert the money to purposes other than developing the property. In such case, plaintiff's lien for the $19,100 would be junior to both the first contract presently in effect, and to the new mortgage. He suggested that the trust agreement be amended to protect plaintiffs against such a possibility.

Plaintiffs returned to Arizona Title with this information. At this point the evidence is in conflict. Arizona Title's trust officer, Briggs, testified that he told plaintiffs that Royal was willing to have the disbursement funds from a new mort-

gage controlled by Arizona Title if the loan were made for new construction, but was not willing to have any such limitation on funds from a new mortgage that might be given to refinance the existing first contract. Plaintiffs testified that they made it very clear to Arizona Title's Mr. Briggs that they wanted protection against the diversion of funds from a new mortgage regardless of its purpose; that they wanted "Builder's Control" by Arizona Title regardless of whether the new mortgage was for new construction or for refinancing.

Briggs had an amendment prepared, and the discussion was resumed concerning plaintiffs' fear of a new mortgage with no protection against a diversion of the funds. Plaintiffs testified that both Briggs and another Arizona Title employee named Lustbader assured them that "the amendment would supersede anything that was conflicting, which would protect us completely." Plaintiffs took the amendment home with them. They did not show the amendment to their attorney, but testified that they relied upon the assurance of Briggs and Lustbader that it would protect them completely, and returned the next morning and signed both the trust agreement and the amendment in the offices of Arizona Title.

This conflict in the evidence was resolved by the trial court sitting without a jury. It specifically found that plaintiffs' version of the transaction was the true one. Since there is ample evidence to support the trial court's findings, we are bound by them. Barnett v. Hitching Post Lodge, Inc., 101 Ariz. 488, 421 P.2d 507.

Section VI A of the original trust agreement contained the following provision:

"Second beneficiary shall be entitled to direct trustee to convey, and trustee is authorized to convey to second beneficiary * * * the legal title to the above described property for the purpose of allowing the recordation of any mortgage or mortgages conveying said proper-

ty as security for any loan (including any refinancing, renewal or increase thereof), in connection with the existing improvements or the construction of any other improvement, title to any portion so conveyed to be immediately reconveyed to the trustee and to be thereafter governed by the terms of this trust agreement subject to said mortgage."

The amendment merely added the following:

"Further, it is understood that any funds from any mortgage or mortgages placed on the subject property for the purpose of the construction of any improvements shall be controlled and disbursed through 'Builder's Control' with Arizona Title Insurance and Trust Company so that the First Beneficiary herein shall be assured that said funds are used solely for the construction of said other improvements and expenses in connection therewith."

A few months after the signing of the trust agreement, Royal arranged a first mortgage to Greater Arizona Savings and Loan Association for $23,300, using part of the proceeds to pay off the first contract, and leaving plaintiffs holding a $19,-100 lien subordinated to the new mortgage. Royal diverted the proceeds of the loan to other purposes. Though it had paid only $6,000 on the property it received roughly $17,500 from the loan (after paying off the first contract and closing costs, etc.), so it was $11,500 ahead at this point. On the other hand, it now owed $42,400 for property appraised at only $35,000, and thus had little incentive to pay either the plaintiffs or Greater Arizona Savings and Loan. The natural result was a default to, and a foreclosure by, the loan company, causing plaintiffs to lose the property which was the security for their contract. Plaintiffs therefore, brought suit against both Royal and Arizona Title. Royal defaulted, and the suit proceeded against Arizona Title. The trial court entered judgment for plaintiffs against Arizona Title for $17,513.97 and interest.

The court's findings of fact were, inter alia:

That the original trust agreement allowed Royal to receive money from a mortgaging of the property being sold; that because of plaintiffs' objections, Arizona Title drafted an amendment "which was to cure the objections plaintiff raised, and to incorporate * * * a provision for builders' control * * *"; that "the parties * * * intended by the language used in the reading of the entire documents, that any monies obtained from the property over and above the liens of record were to be placed in builder's control and not delivered to Royal"; that "the intention of all parties was that the lien of plaintiffs would only be subordinated for the purpose of new construction"; that "no monies derived from a * * * mortgage of land were to be paid to Royal until plaintiffs were paid in full"; and that the mortgage by Royal was not for new construction.

Arizona Title contends that the trust agreement, as amended, permitted Royal to place a mortgage on the property for the sole purpose of "refinancing" the existing first contract, even though the funds so obtained were not intended to be used for new construction or for the improvement of the existing buildings; that the agreement was clear and unambiguous in this regard; and that, therefore, the trial court should not have admitted parol evidence of the events and discussions that preceded the execution of the contract.

■ Arizona Title relies upon the general principle that parol evidence may not be received to vary the terms of a written instrument. The correctness of this statement cannot be disputed. However, this Court has set forth certain rules of law governing the interpretation of contracts which are applicable to the instant case.

In Germania Fire Insurance Company of New York v. Bally, 19 Ariz. 580, 173 P. 1052, 1 A.L.R. 488, we said:

" * * * Over and over it has been decided that the intention of contracting parties, if ascertainable, must prevail. This rule is fundamental and controlling. * * *"

In Rental Development Corporation of America v. Rubenstein Construction Company, 96 Ariz. 133, 393 P.2d 144, we said:

"The rule is well established that a court, when construing an agreement, must put itself in the position of the parties and give effect to their intention *as of the time the agreement was made*. * * *" [Emphasis ours.]

In Coe v. Winchester, 43 Ariz. 500, 33 P.2d 286, the following appears:

"This language and the contract should be considered from the standpoint of the men who used the language and entered into the contract and the purpose they intended to accomplish."

■ We agree with the appellant that the agreement as amended is not ambiguous. However, we do not agree with the interpretation placed upon it by the appellant. There is only one reasonable construction which can be placed upon the original agreement and the amendment. Clearly the amendment was intended to cover the refinancing to the amount of the present mortgage, and if the refinancing loan was for a greater amount than was necessary to pay off the existing loan, the excess could be used only for construction purposes. In that event it would have been the duty of Arizona Title and Trust Company to protect the Hunters and see to it that this excess money was used solely for that purpose. Any other interpretation would make Arizona Title guilty of gross incompetence or an intentional deception of plaintiffs by making them believe the amendment offered them more protection than they already had.

The Restatement of Trusts, 2nd, Section 201, Comment B, contains the following:

*"Mistake of law as to existence of duties and powers.* A trustee commits a breach of trust not only where he violates a duty in bad faith, or intentionally although in good faith, or negligently, but also where he violates a duty because of a mistake as to the extent of his duties and powers. This is true not only where his mistake is in regard to a rule of law, whether a statutory or common-law rule, but also where he interprets the trust instrument as authorizing him to do acts which the court determines he is not authorized by the instrument to do. In such a case, he is not protected from liability merely because he relies upon the advice of counsel. Compare § 297, Comment *j.* If he is in doubt as to the interpretation of the instrument, he can protect himself by obtaining instructions from the court. The extent of his duties and powers is determined by the trust instruments and the rules of law which are applicable, and not by his own interpretation of the instrument or his own belief as to the rules of law."

Arizona Title complains of the trial court's ruling excluding testimony by one Dowd who was presented as an expert in the interpreting of trusts and trust procedures. An attempt was made to use Dowd to explain the meaning of a "refinancing mortgage" as opposed to a new construction mortgage. The term "refinancing mortgage" is not so esoteric as to be beyond the ken of this Court, and, from a reading of the complete record, we are convinced that the trial court had a clear understanding of the term.

While the agreement was not ambiguous the oral evidence which was introduced before the court without a jury also supported the above interpretation.

For the reasons stated herein, the decision of the Court of Appeals is vacated,

and judgment of the Superior Court affirmed.

UDALL, V. C. J., and STRUCK-MEYER, BERNSTEIN, and LOCK-WOOD, JJ., concur.