527 P.2d 301

**Robert D. GIBSON, Robert L. Hale, and Hazel D. Miller, Appellants,**

v.

**W. D. PARKER TRUST**, Barnes R. Parker, Trustee; Barnes R. Parker, II, a single man; David L. Parker, a single man; Barnes R. Parker and Barbara Parker, Individually and as husband and wife, Appellees.

**No. 2 CA–CIV 1588.**

Court of Appeals of Arizona, Division 2.

Oct. 21, 1974.

Laber, Lovallo & Colarich, Ltd. by Paul W. Colarich, Jr., Tucson, for appellants.

Nasib Karam, Nogales, for appellees.

## OPINION

KRUCKER, Judge.

This appeal challenges the propriety of granting a motion for summary judgment in favor of the appellees-defendants.

Appellants are a real eastate broker and salesmen who instituted this litigation when the appellees, ranch owners, refused to pay a real estate sales commission upon selling the Salero Ranch to a Dr. Dwight G. Hudson for $1,600,000.00. Appellants filed a suit alleging breach of contract and tortious conduct.

On appeal from a motion for summary judgment, all evidence must be viewed in a light most favorable to the opponent to the motion and be given the benefit of all favorable inferences that are reasonably apparent. Livingston v. Citizen's Utility, Inc., 107 Ariz. 62, 481 P.2d 855 (1971). If the material facts of the case are uncertain, summary judgment is improper. Boozer v. Arizona County Club, 102 Ariz. 544, 434 P.2d 630 (1968). The motion for summary judgment should be granted only when the record demonstrates that there are no material questions of fact, and that as a matter of law the moving party is entitled to summary judgment. Almli v. Updegraff, 8 Ariz.App. 494, 447 P.2d 586 (1967).

Construing the facts accordingly, it appears that in May, 1971, Barnes R. Parker, Sr., Trustee of W. D. Parker Trust, discussed with O. H. Gahlberg, a real estate broker,[1] the sale of the Salero Ranch in Santa Cruz County, Arizona. There is some conflict based upon the depositions of Mr. Gahlberg and Barnes Parker as to whether Parker solicited Gahlberg's aid in selling the Salero Ranch.

No written broker's agreement resulted from Parker and Gahlberg's conversation. However, Gahlberg proceeded to advertise the ranch in the Wall Street Journal and the Arizona Daily Star and informed Parker of these activities.

In June of 1971, appellant Bob Gibson, a real estate salesman working for Hazel Miller, a real estate broker, telephoned Gahlberg regarding the advertisements. As a consequence of this conversation and other meetings, it was agreed that Gahlberg would split his commission with appellants if they provided a buyer who was ready, willing and able. Mr. Gahlberg indicated in his deposition that he made this type of oral agreement with several other brokers. He claimed that all brokers were informed that he had only an oral listing agreement. This point was disputed by Gibson, who stated that Gahlberg told him that he had an exclusive written listing.

1. This action also named O. H. Gahlberg as a party defendant, but he is not now a party to this appeal.

Thereafter, Mr. Gibson traveled to Nogales to see the ranch; showed the ranch to Jim Tatum, a prospective buyer, and spoke with Barnes Parker on the telephone. Additionally, Gibson, with the aid of Robert L. Hale, contacted Mr. Tom Black, a lifelong friend of Parker, and agreed to pay Black a consulting fee of $10,000 for helping to effect the sale of the ranch.

With the assistance of Mr. Black, Gibson introduced Barnes Parker to Dr. Hudson, the ultimate purchaser, in November, 1971. Gibson admitted that he never requested Mr. Gahlberg to inform Parker that he had a prospective buyer to examine the ranch. However, in his deposition Gahlberg stated that he informed Parker that Hazel Miller was working under his listing. Furthermore, Black stated that he informed Parker he was working with Gibson and expected to receive $10,000 from Gibson and Hale if Dr. Hudson bought the ranch. These conversations purportedly preceded the final sale to Dr. Hudson.

Appellants contend that although Gahlberg did not have a written listing agreement with Parker, his actions were ratified by Parker. This argument is premised on the testimony of Gahlberg that he informed Parker of his actions and Parker did nothing to stop him or deny the apparent authority to any third persons.

Based on their assumption that an agency relationship existed, appellants contend that Parker was liable for the fraud of his agent. Their position was that when Gahlberg told them he had an exclusive written listing, he committed actual or constructive fraud.

Finally, appellants contend that appellees are estopped from asserting the Statute of Frauds as a defense because they detrimentally relied upon the representations made by Parker's agent, O. H. Gahlberg.[2] Also, Barnes Parker either carelessly or intentionally allowed them to change their position based upon their mistaken belief and profited therefrom.

## LIABILITY FOR BROKER'S COMMISSION

■ A real estate broker cannot maintain an action for a commission in the absence of a written agreement. Weldon v. Greer, 29 Ariz. 383, 241 P. 957 (1926). Neither partial nor complete performance will take an oral contract between broker and seller out of the Statute of Frauds. Butterfield v. MacKenzie, 37 Ariz. 227, 292 P. 1097 (1930).

In Butterfield v. MacKenzie, supra, the court refused to apply the doctrine of estoppel to real estate brokers' or agents' agreements which are within the Statute of Frauds.[3] The court's rationale for this conclusion is:

"If plaintiff's theory is correct, it makes no difference whether the statutory requirements have been complied with or not, providing the party to be charged has agreed to reduce the oral agreement to writing and to attach thereto his signature. Under this theory the detail of reducing the agreement to writing and affixing the signature may be postponed until after full performance, or a breach, and then the party to be charged may in all equitable action be required to execute the formal written contract and pay the agreed price for full performance, or damages for the breach, according as the facts show the one or the other. Ingenious as this reasoning may be, it leads to

2. A.R.S. § 44–101, Statute of Frauds, provides:

"No action shall be brought in any court in the following cases unless the promise or agreement upon which the action is brought, or some memorandum thereof, is in writing and signed by the party to be charged, or by some person by him thereunto lawfully authorized:

\* \* \* \* \*

7. Upon an agreement authorizing or employing an agent or broker to purchase or sell real property, or mines, for compensation or a commission."

3. See also, Sorenson v. Smith, 65 Or. 78, 129 P. 757, 760 (1913).

an absurd and nullifying result. If allowed, it would completely defeat the purpose of the statute of frauds." *Butterfield,* supra, at 231, 292 P. at 1098.

If we were to follow the appellants' rationale and recognize the doctrine of estoppel as to a subsequent co-broker, we would be placing him in a position superior to that of the initial broker who merely had an oral agreement. The thrust of *Butterfield* is to eliminate such backdoor means of circumventing the Statute of Frauds. We see no reason for giving preference to a co-broker who fails to ascertain whether a written contract exists in the first instance over a broker who fully performs pursuant to an oral agreement. Appellant Hazel Miller stated in her deposition that she was well aware that a listing agreement must be in writing, but never requested to see a copy of the one Gahlberg allegedly said he had.[4]

In the cases of Gene Hancock Construction Co. v. Kempton & Snedigar Dairy, 20 Ariz.App. 122, 510 P.2d 752 (1973), and Gray v. Kohlhase, 18 Ariz. App. 368, 502 P.2d 169 (1972), we correctly stated the general principle that one may be estopped to assert the Statute of Frauds; but, we also indicated that this would be applicable to real estate listing agreements. As previously mentioned, the Arizona Supreme Court has declined to apply this equitable remedy to real estate listing agreements. Although the results in these prior cases were eminently correct, we expressly disaffirm the statements therein which recognize the applicability of the doctrine of estoppel to real estate listing agreements.

## LIABILITY FOR FRAUD

As to appellants' action for fraud, they are correct that Gahlberg could be regarded as Parker's agent without the existence of a written listing agreement. 2A C.J.S. Agency § 43 (1972). Additionally, they point out that the principal may be estopped to deny the agent's authority where he has allowed others to detrimentally rely on the apparent authority of the agent, citing Bristol v. Moser, 55 Ariz. 185, 99 P.2d 706 (1940) and Daru v. Martin, 89 Ariz. 373, 363 P.2d 61 (1961).

Examining the facts in a light most favorable to appellants, we conclude that Parker may have known of the fact that Gahlberg was acting on his behalf and impliedly ratified his authority to do so. However, when Gahlberg entered into a commission-splitting agreement with appellants, their relationship became one of joint venture. Nutter v. Bechtel, 6 Ariz. App. 501, 433 P.2d 993 (1967).

Significantly, there is no evidence to indicate that Parker expressly authorized Gahlberg to enter into any co-broker agreements or was aware of any alleged misrepresentations arising therefrom; nor is such authority implied where one acts as an agent for the seller. Ogden v. Yates' Estate, Tex.Civ.App., 154 S.W.2d 215, 217 (1941); 12 C.J.S. Brokers § 22 (1938). Where a broker makes misrepresentations while acting outside of his authority, the seller is not liable. The following observation is made in 12 C.J.S. Brokers § 136 (1938):

"In the absence of express authority, however, the principal is not responsible

---

4. Art. 26, § 1 of the Arizona State Constitution, A.R.S., reads:

"Any person holding a valid license as a real estate broker or a real estate salesman regularly issued by the Arizona State Real Estate Department when acting in such capacity as broker or salesman for the parties, or agent for one of the parties to a sale, exchange, or trade, or the renting and leasing of property, shall have the right to draft or fill out and complete, without charge, any

and all instruments incident thereto including, but not limited to, preliminary purchase agreements and earnest money receipts, deeds, mortgages, leases, assignments, releases, contracts for sale of realty, and bills of sale."

The privileges granted by the Constitution carry with them the responsibility of being aware of the Statute of Frauds and its proper application.

or liable, without limitations, for misrepresentations not within the ordinary scope of the broker's employment. This rule applies to misrepresentations made by a broker authorized by the principal merely to find a purchaser for real property, or to bring together the principal and a prospective purchaser. . . ." (Footnotes omitted) [Citing Light v. Chandler Improvement Co., 33 Ariz. 101, 261 P. 929 (1928)]

Therefore, it would appear that appellants' remedy is against Gahlberg for allegedly breaching his fiduciary duties arising out of the co-brokers' agreement.

The appellants having failed to establish any material questions of fact and the movant being entitled to judgment as a matter of law, the ruling on the motion for summary judgment was correct.

Affirmed.

HATHAWAY, C. J., and EUBANK, J., concur.

NOTE: Judge LAWRENCE HOWARD having requested that he be relieved from consideration of this matter, Judge WILLIAM E. EUBANK was called to sit in his stead and participate in the determination of this decision.