574 P.2d 469

**DEL RIO LAND, INC., James B. Carr and Jane Doe Carr, his wife, Appellants,**

v.

**Pierre H. HAUMONT, Jr. and Vernece Haumont, his wife, Appellees.**

No. 1 CA–CIV 3249.

Court of Appeals of Arizona,
Division 1,
Department A.

Oct. 13, 1977.

Rehearing Denied Dec. 13, 1977.

Review Denied Jan. 17, 1978.

Marvin Johnson, P. C. by Philip C. Gerard, Phoenix, for appellants.

Cox & Cox by Alfred S. Cox and L. J. Cox, Jr., Phoenix, for appellees.

## OPINION

HAIRE, Judge.

The principal issues raised on this appeal relate to the applicability of the Statute of Frauds to a sale of real property by an auctioneer. In the event the Statute of Frauds is found inapplicable, the appellants (Owners) also raise an additional issue concerning the effect of the "subject to the mortgage" language under which the property was advertised and sold.

The appellees (Buyers) sued the Owners for specific performance, and were initially successful in obtaining summary judgment in their favor. However, on appeal the Arizona Supreme Court reversed that judgment, finding substantial issues of material fact which precluded disposition by summary judgment. *Del Rio Land, Inc. v. Haumont*, 110 Ariz. 7, 514, P.2d 1003 (1973). In its opinion, the Arizona Supreme Court discussed in some detail the interpretation which the trial judge and the Buyers placed upon the language "subject to the mortgage", and held as follows:

> "Apparently the trial court concluded that the term 'subject to the mortgage' meant that the seller would be required to use the proceeds of the sale to pay off the mortgage. This was the position advocated by the auctioneer and Haumont. We cannot agree with this interpretation of the words used.
>
> \* \* \* \* \* \*
>
> A sale or auction subject to a mortgage means that the seller receives the purchase price and the buyer takes the property subject to the unpaid mortgage; while the buyer is not under a personal obligation to pay the mortgage, he must do so if he desires to retain the ownership of the property, for the seller is not required to use the funds paid him to pay

off the mortgage. The terms of a sale which include a provision, 'subject to the mortgage' indicates that the actual or true purchase price of the property is in actuality the amount paid to the seller plus the amount of the mortgage." 110 Ariz. at 9, 514 P.2d at 1005.

The issues relating to the Statute of Frauds were not raised in the prior appeal, but were strongly urged by the Owners in a trial to the court after remand. The trial judge found against the Owners on their Statute of Frauds defense, and then entered judgment for the Buyers. The terms of that judgment again appear to be inconsistent with the Arizona Supreme Court's previously established interpretation of the "subject to the mortgage" language.

Against this background, we consider now the appellants' contention that the trial judge erred in determining that the Statute of Frauds had been satisfied. Specifically, the conclusion of law entered by the trial court was as follows:

> "6. The statute of frauds applies to auctions of land such as the one here in question. The statute of frauds has been satisfied by the receipt, the purchase contract and the auctioneers agreement."

The question of the applicability of Statute of Frauds defenses to auction sales of real property assumes two phases. The first phase involves the question of the auctioneer's authority, which, under Arizona law, must be "in writing, subscribed by the party sought to be charged."[1] Although some questions are raised concerning the interpretation of the written authority given to the auctioneer, no Statute of Frauds questions are presented in this appeal relating thereto.

The second phase of the Statute of Frauds question concerning sales of real

---

1. A.R.S. § 44–101 provides:

 No action shall be brought in any court in the following cases unless the promise or agreement upon which the action is brought, or some memorandum thereof, is in writing and signed by the party to be charged, or by some person by him thereunto lawfully authorized:

 \* \* \* \* \* \*

 6. Upon an agreement for leasing for a longer period than one year, or for the sale of real property or an interest therein. Such agreement, if made by an agent of the party sought to be charged, is invalid unless the authority of the agent is in writing, subscribed by the party sought to be charged.

property by auctioneers is that which is normally inherent in any sale of real property. Here, the trial judge expressly found that "the Statute of Frauds applies to auctions of land such as the one here in question." This conclusion is undoubtedly correct. See authorities cited, 7 Am.Jur.2d *Auctions and Auctioneers*, § 34. However, we do not find support in the record for the trial court's further conclusion that in this case the statute was satisfied.

A.R.S. § 44–101 provides a defense to the action here in question "unless the promise or agreement . . . , or some memorandum thereof, is in writing and signed by the party to be charged, or by some person by him thereunto lawfully authorized . . ." The question of what constitutes a memorandum sufficient to satisfy the Statute of Frauds is set forth in the Restatement of Contracts, § 207, as follows:

"A memorandum, in order to make enforceable a contract within the Statute, may be any document or writing, formal or informal, signed by the party to be charged or by his agent actually or apparently authorized thereunto, which states with reasonable certainty,

(a) each party to the contract either by his own name, or by such a description as will serve to identify him, or by the name or description of his agent, and

(b) the land, goods or other subject-matter to which the contract relates, and

(c) the terms and conditions of all the promises constituting the contract and by whom and to whom the promises are made."

This section was approved and adopted as the law in Arizona by the Arizona Supreme Court in *Shreeve v. Greer*, 65 Ariz. 35, 173 P.2d 641 (1946). Here, as previously stated, the trial judge found that the Statute of Frauds has been satisfied by "the receipt, the purchase contract and the auctioneers agreement." We consider first the sufficiency of the "receipt."

The receipt itself is very limited in content, and was given on the afternoon of the auction sale by the auctioneer's clerk. Although denominated "receipt", the document does not purport to actually be a receipt for any particular sum of money. The auctioneer's name and address is printed in the upper right hand corner and the receipt contains the following additional information:

UNIT PRICE pr acre 2600.00; BUYER NO. 176; AMOUNT _____; real estate —72.31 acres; LOT NO. 97;

and, apparently as a signature, the hand-printed initials "W. M." (Material in capital letters was in bold face print in the receipt, with the lower case letters and numerals written in ink).

The fact that the receipt was not signed by the "party to be charged" does not appear to present a problem. In recognition of the practicalities and exigent circumstances generally involved in auction sales, the law recognizes that an authorized auctioneer or his clerk may make and sign a memo on behalf of both the buyer and seller immediately after the sale, if done before the auctioneer's power is revoked.[2] Although there is some evidence which would indicate that the auctioneer's power was revoked prior to the issuance of this receipt, taking the evidence most strongly in favor of the prevailing party in the trial court (the Buyers), we must conclude that the receipt was issued and signed by the auctioneer's clerk before the auctioneer's authority was revoked, and thus, for the purposes of the Statute of Frauds, constitutes the signature of "the party to be charged." However, when the remainder

2. The Restatement of Contracts, § 212 provides:

(1) In a sale and in a contract to sell at auction the auctioneer or his clerk, if not interested in the subject matter of the sale otherwise than in his functions as auctioneer or auctioneer's clerk, is authorized to make and sign a memorandum on behalf of both the buyer and the seller, immediately after the sale.

(2) The power of the auctioneer and of his clerk to sign a memorandum as stated in Subsection (1) may be revoked by a buyer or seller at any time before the power is exercised.

of the contents of the receipt are compared with the requirements set forth in the Restatement § 207, we find several deficiencies which render the receipt inadequate as a memorandum sufficient to satisfy the requirements of the Statute of Frauds.

While arguably the total purchase price could be computed from the per acre price given in the receipt, there is nothing stated concerning the terms and conditions of payment. Inasmuch as the alleged oral contract provided for down payment with monthly installment payments thereafter, the receipt is insufficient in that regard. (*See* Illustration 3, Restatement of Contracts, § 207). Nor does the receipt contain any reference to the "subject to the mortgage" condition, the interpretation of which has been such a problem in this litigation.

Another deficiency in the receipt relates to the failure to identify with any certainty the land involved. If we assume for present purposes that the notation "LOT NO. 97" in the signed writing (the receipt) constitutes an adequate reference to an unsigned writing (the auction advertising brochure, Exhibit 17)[3], we find no additional description in that brochure, merely the following: "LOT NO. 97 (72 acres A–2) real estate" (matter in parenthesis penciled in on Exhibit 17). In view of the foregoing deficiencies in the receipt rendering it insufficient as a Statute of Frauds memorandum, we need not discuss other possible deficiencies therein relating to the identity of the parties.

 We turn now to the purchase agreement and consider its sufficiency as a Statute of Frauds memorandum. This purchase agreement was apparently prepared on the afternoon following the auction by a real estate broker contacted by an employee of the auctioneer. We find the purchase agreement insufficient in two aspects. First and foremost, it was never signed by the Owners. It is true that the purchase agreement was signed by an independent real estate broker contacted by the clerk of the auctioneer, and this broker's signature is relied upon by the Buyers as constituting a sufficient signature so as to authenticate the terms of the sale on behalf of the Owners. However, there is a complete absence of any evidence which would indicate that the broker was authorized to sign on behalf of the Owners, and in fact, he did not purport to do so. The authority of the auctioneer and his clerk to sign a memorandum on behalf of the parties, discussed *supra*, is very limited and cannot be extended so as to allow him to further delegate that authority to a real estate broker having no connection with the Owners.

In addition to not being signed by the party sought to be charged, there is a further defect in the purchase agreement which prohibits its use as a memorandum of the alleged oral contract. The purchase agreement is a standard form "Purchase Contract and Receipt" and contains as one of its terms the following:

"Eleventh: This deposit is accepted subject to prior sale and subject to approval of owner."

This provision would, of course, allow the Owners to subsequently approve or disapprove the Buyers' offer, and entirely negates its value for the purposes sought. A party cannot on one hand assert that a written document constitutes a memorandum of the parties' agreement, and then pick and choose those terms and conditions of the written document which he is willing to abide by, excluding others which he alleges do not constitute a part of the sought-to-be-enforced oral contract.

 The final document found by the trial judge as constituting a satisfaction of the Statute of Frauds is the auctioneer's contract. This contract was entered into more than one month prior to the transaction alleged here, and separate and apart from its efficacy as showing the authority of the auctioneer, cannot be considered as evidencing in any way the alleged oral contract subsequently entered into between the Buyers and the Owners.

---

**3.** See Restatement of Contracts, § 208 *infra*.

■ We have discussed the contents of the receipt, the purchase agreement and the auctioneer's agreement separately, and have demonstrated that individually none of these items furnishes adequate satisfaction of the requirements of the Statute of Frauds. The trial judge's conclusion of law referred to these items conjunctively, and therefore we now consider the question of whether these items can be considered together in determining whether there was a sufficient memorandum.

The Restatement of Contracts, § 208 sets forth the general principles governing the circumstances under which several writings may be considered collectively for the purpose of satisfying the memorandum requirements:

"The memorandum may consist of several writings,

(a) if each writing is signed by the party to be charged and the writings indicate that they relate to the same transaction, or

(b) though one writing only is signed if

(i) the signed writing is physically annexed to the other writing by the party to be charged, or

(ii) the signed writing refers to the unsigned writing, or

(iii) it appears from examination of all the writings that the signed writing was signed with reference to the unsigned writings.

The provisions of subsection (a) are not applicable since each writing was not signed by the party sought to be charged. Likewise, the provisions of subsection (b) are inapplicable, since the signed writing (the receipt) was not physically annexed to any of the other writings, did not refer to any of the writings, nor is there any indication that the signed writing was signed with reference to the other writings. *See also*, 7 Am.Jur.2d, *Auctions and Auctioneers*, § 42. We therefore hold that the documents expressly relied upon by the trial judge as constituting satisfaction of the Statute of Frauds requirements were not sufficient for that purpose when considered separately, and could not be considered collectively for that purpose.

■ One further contention relating to the satisfaction of the Statute of Frauds was urged in the Buyers' post-trial memorandum in the trial court and in the answering brief on appeal. This contention was that the signed deposition of the auctioneer constituted an adequate memorandum. The major difficulty with this contention is that the deposition of the auctioneer was not taken until almost 23 months after the auction sale. While, as stated in the Restatement of Contracts § 212, the auctioneer is generally held to have authority to sign a memorandum on behalf of both parties, this authority is limited to the period "immediately after the sale." [4] A delay of 23 months can hardly be considered as coming within the authorized period. In addition, as stated in § 212(2), the power of the auctioneer to sign a memorandum on behalf of a buyer or seller may be revoked at any time before the exercise of that power. Here, the evidence is uncontradicted that the auctioneer's authority was expressly terminated in writing on December 12, 1968, long before the taking of his deposition.

■ Since we have concluded that the Statute of Frauds was applicable and not satisfied, we next consider whether, as found by the trial court, the Owners were estopped to assert the Statute of Frauds as a defense. The principle that a party may be estopped to assert the Statute of Frauds as a defense is well established in Arizona. *Custis v. Valley National Bank of Phoenix*, 92 Ariz. 202, 375 P.2d 558 (1962); *Waugh v. Lennard*, 69 Ariz. 214, 211 P.2d 806 (1949); *Cress v. Switzer*, 61 Ariz. 405, 150 P.2d 86 (1944); *Gene Hancock Construction Co. v. Kempton & Snedigar Dairy*, 20 Ariz.App. 122, 510 P.2d 752 (1973); *Gray v. Kohlhase*, 18 Ariz.App. 368, 502 P.2d 169 (1972).[5] The

---

4. *See* Restatement of Contracts, § 212, illustration 1, which indicates that a memorandum made by the auctioneer on the following day would be insufficient.

5. The doctrine of estoppel is not applicable to A.R.S. § 44–101(7) concerning real estate brokers' agreements. *See Gibson v. W. D. Parker Trust*, 22 Ariz.App. 342, 527 P.2d 301 (1974).

facts giving rise to an estoppel must be more than the mere fact that the charged party has admittedly entered into an oral agreement which he subsequently refuses to perform, thereby depriving the plaintiff of the benefits of the oral agreement. Stated another way, the plaintiff must show substantial additional detriment separate and apart from the failure to receive the benefits he would have received under the oral agreement. *Custis v. Valley National Bank of Phoenix, supra; Gray v. Kohlhase, supra.*

Here, giving the Buyers the benefit of a favorable resolution of evidentiary conflicts, they were advised by December 12, 1968, at the latest, of the Owners' refusal to perform the alleged oral agreement of November 22, 1968. What detriment of a nature other than those discussed above, did the Buyers incur prior to that date? The only detriment urged by the Buyers is that the Owners permitted the Buyers to arrange for financing [6] and to present a check to the auctioneer for what the Buyers considered to be the down payment. This alleged detriment is not sufficient to create an estoppel, and in fact constitutes nothing more than part performance by payment of a portion of the purchase price, which alone does not bar the assertion of the Statute of Frauds defense so as to permit specific performance of the oral contract. The applicable principles are set forth in Restatement of Contracts, § 197, adopted and approved in *Condon v. Arizona Housing Corporation*, 63 Ariz. 125, 160 P.2d 342 (1945), as follows:

"Where, acting under an oral contract for the transfer of an interest in land, the purchaser with the assent of the vendor

(a) makes valuable improvements on the land, or

(b) takes possession thereof or retains a possession thereof existing at the time of the bargain, and also pays a portion or all of the purchase price,

the purchaser or the vendor may specifically enforce the contract."

It is evident that the payment of a portion of the purchase price alone is not such a detriment or such part performance as will create an estoppel or part performance removing the bar of the Statute of Frauds. The Buyers in their claim of estoppel rely heavily upon *Zuhak v. Rose*, 264 Wis. 286, 58 N.W.2d 693 (1953). The primary question in that case was whether the seller could effectively withdraw land from sale after the bidding had started at an auction advertised as "without reserve." The court held that the seller could not do so, and that an effective oral contract had been entered into with the highest bidder, and then disposed of the seller's Statute of Frauds defense as follows:

"The trial court found the memorandum actually given by Bohr [auctioneer] and his associate was sufficient under the circumstances. We think it is immaterial here. Defendant discharged the auctioneer, thereby revoking his authority to give any memorandum and defendant left the scene. Under the circumstances he cannot complain that plaintiff has no memorandum."

Initially, we note that the Wisconsin Court cites no authority for its position, which appears to be directly in conflict with subsection (2) of the Restatement of Contracts, § 212, quoted *supra*. Secondly, we note that the trial court in *Zuhak* found that the auctioneer did in fact make a sufficient memorandum, contrary to the facts in the case *sub judice*. Here, although the auctioneer's authority was not terminated until some three weeks later, he never made a sufficient memorandum.

We cannot consider that the failure of the auctioneer to make a memorandum was immaterial, since to so hold would have

---

**6.** The only evidence in the record which this Court has found concerning the arrangements made for financing is the Buyer's testimony that he called the bank, told them the amount of money he would need, and that he would be down shortly to pick up the check.

the effect of rendering the Statute of Frauds inapplicable to auction sales, contrary to the universally accepted view in that regard. *See* 7 Am.Jur.2d, *Auctions and Auctioneers*, § 34; Restatement of Contracts, § 212, *supra.*

We therefore conclude that the Statute of Frauds was applicable here and not satisfied, and that the Owners were not estopped to assert that defense. Having arrived at this conclusion, we need not consider the Owners' additional contention that the trial court's judgment violated the Arizona Supreme Court's interpretation of the contract words "subject to the mortgage" in its prior opinion in this case, and that such interpretation constituted the law of the case, binding upon remand.

The judgment is reversed and the matter is remanded with directions to enter judgment for the appellants.

FROEB, C. J., concurring.

NELSON, Presiding Judge, dissenting:

Since I am of the opinion that the Statute of Frauds was complied with and that the "subject to" question, which was the issue in the prior Supreme Court decision in this cause, *Del Rio Land, Inc. v. Haumont*, 110 Ariz. 7, 514 P.2d 1003 (1973) was properly resolved by the trial court on the facts, I must respectfully dissent.

The essence of the majority opinion, whether fully articulated or not, is that there cannot be a specifically enforceable auction sale of land without reserve if the seller is not 100% happy with the price obtained immediately after the fall of the auctioneer's gavel. Although the majority of courts may sanction such a result by allowing the revocation of the auctioneer's authority "between the fall of the hammer and the signing of the memorandum", (*see generally*, 7 Am.Jur.2d *Auctions and Auctioneers, supra*, § 36), I do not believe such a result is consonant with the intent of the Statute of Frauds, nor required thereby in the typical auction situation. While the disappointed bidder may have an action for damages, I see no reason for such a limitation.

Our Supreme Court, in commenting upon the purposes of the Statute of Frauds, i. e., to prevent fraud through oral testimony, even though that comment was made regarding a series of writings to sell cattle, as opposed to land, made a general observation which strikes at the heart of this case:

"The statute of frauds is merely a rule of evidence, and not one governing the making of the contract, and its purpose is to prevent a party from being compelled, by oral and perhaps false testimony, to be held responsible for the conditions of a contract he claims he never agreed to. *But, if that party has offered in writing to make the very contract with which it is sought to charge him, he has over his own signature admitted his willingness to be held thereby, and cannot justly complain* because the acceptance of the other party who seeks to hold him is oral." *Bartlett-Heard Land and Cattle Co. v. Harris*, 28 Ariz. 497, 503, 238 P. 327, 329 (1925). (Emphasis added)

In this spirit, I believe the majority's analysis of Restatement of Contracts, § 208, *supra*, regarding the integration of several writings should have come to the opposite conclusion, as did the trial court.

Essentially, we have two signed writings and one or two unsigned writings which in the context of auction sales should be held to have been executed with reference to each other. Restatement of Contracts, § 208, *supra* ; 7 Am.Jur.2d, *Auctions and Auctioneers*, § 42, *supra*. These items, the auctioneer's agreement, the receipt, and the advertising brochures, obviously were written with reference to each other and cover all the details of the sale of the land, including location, description, price and method of payment, 25% down, balance at 7% interest for 100 equal monthly payments. These matters are not basically questioned in the record. The words "subject to", which were discussed in the Supreme Court's prior opinion in the case, *Del Rio Land, Inc. v. Haumont, supra*, were in dispute but did not constitute as much of a "statute of frauds" as a "parol evidence" issue regard-

ing the mathematical computation of the price, and will be discussed later.

There is no serious doubt regarding the auctioneer's authority to sell the land. From the agreement signed by the sellers, he had complete authority. While they originally wanted to reserve the right to approve the sale, the auctioneer refused that condition and they subsequently acceded to his terms and signed the agreement. Likewise there can be no serious controversy regarding the receipt, vis-a-vis the price per acre and the land covered. It was signed by the auctioneer's employee and the auctioneer's copy was found in his receipt book, along with the other receipt copies of the auction in question. *Cf.* 7 Am.Jur.2d, *Auctions and Auctioneers, supra,* particularly § 38, notes 5, 6 and 7. The majority concedes it was a writing "signed by a party to be charged" within the meaning of the Statute of Frauds.

Insofar as the description of the land is concerned and the terms of the sale, the majority alludes to only a portion of the advertising brochure (Exhibit 17) *supra,* which was merely the specific descriptive list of the some 180 items (denominated as lots), including the one parcel of land described therein as "real estate" and listed under LOT NO. 97. The actual advertising brochure itself, however, (Exhibit 4 offered into evidence by the sellers), has the exact location of the land, the approximate acreage, the zoning of the land, the terms of the sale, including required down payment, interest rate, and number of monthly payments. There was only one parcel of real estate to be sold. A map of the central portion of Phoenix was also included, pinpointing in green the exact location of the land on the map. This was clearly a sufficient description. *Robinson v. Black,* 73 N.M. 116, 385 P.2d 971 (1963). While this New Mexico case involved damages and not specific performance, it is very persuasive as to the statute of frauds issue vis-a-vis auction sales, particularly the integration of several writings to properly identify the land sold at auction.

The issue of "subject only to the existing mortgage", *Del Rio Land, Inc. v. Haumont, supra,* 110 Ariz. at 8, 514 P.2d at 1004 [the Supreme Court was quoting from the auctioneer's agreement, one of the documents now in issue] is, in my opinion, a sham issue after the retrial. There is no question that everyone knew the land was encumbered by a small mortgage. While this matter was properly resolved by the Arizona Supreme Court as one not amenable to a summary judgment resolution in favor of Haumont, they did not mandate the result now sought by Del Rio. That opinion simply said there were genuinely disputed facts which precluded summary judgment. *Del Rio Land, Inc. v. Haumont, supra.*

Now that the facts have been fully developed, it is clear that there was no real dispute about the "subject to" language, but a dispute as to how the bidding was to take place so as to arrive at the ultimate price: total value of the land, less the encumbrance.

At the hour set for the auction, no one on the property where the bidding was to take place knew the exact amount of the mortgage, although general figures were known and included in the brochure, *supra.* Rather than wait for an exact figure and then require the potential bidders to divide the sum, $55,000 plus, into the 72.31 acres, and reduce their per acre bid accordingly, it was announced that they should bid on what they believed to be the actual value of the land, regardless of the mortgage, and the mathematics of how much went to the sellers and how much went to pay off the mortgage could be done later.

The arrangement did not in any way vary the "subject to" provisions of the contract, and was thus not proven in violation of the "parol evidence rule", the real evidentiary question involved with this issue. *See generally: Arizona Title Insurance & Trust Company v. Hunter,* 103 Ariz. 384, 442 P.2d 831 (1968); *Farnsworth v. Hubbard,* 78 Ariz. 160, 277 P.2d 252 (1954); *7–G Ranching Company v. Stites,* 4 Ariz.App. 228, 419 P.2d 358 (1966). Since the land *was* sold "subject to" the mortgage, this issue is not a part of the broader statute of frauds

question discussed above and can be, and should be, thus summarily resolved.

While I agree with the majority of the Court that the Wisconsin case of *Zuhak v. Rose, supra,* is not persuasive in its reasoning vis-a-vis the possible statute of frauds question or the estoppel issue, it did reach an obviously correct result. We should come to the same conclusion, adding only the proper analysis and law justifying that result.

I would affirm the judgment in all respects.